APPLEBACK, (POSTMASTER GENERAL v.) See Case No. 11,305.

APPLEBY, (HOPNER v.) See Case No. 6,-699.

APPLER, (TRAVERS v.) See Case No. 14,-148.

## Case No. 497a.

### APPLETON v. CHAMBERS.

[3 App. Com'r Pat. 384.]

Circuit Court, District of Columbia. Sept. 21, 1860.

PATENTS FOR INVENTIONS—INTERFERENCE—PRIORITY—CAVEAT—LACHES—WITNESSES.

[1. On appeal from the commissioner of patents in an interference case, the appellant must

rely upon the strength of his own case, not the weakness of his adversary's.]

[2. One who filed a caveat in 1855, and used constant effort to perfect his invention until his application for a patent, in 1859, is a prior inventor, with respect to another person, who conceived the idea after the filing of the caveat.]

[3. Upon the question of priority of invention in an interference case, one of the alleged inventors is not a competent witness in his own behalf, nor is another person who is to have an interest in the patent if issued.]

Appeal [of Appleton] from the decision of the commissioner of patents refusing to grant letters patent to them for an improvement in paper-folding machines, and awarding priority of invention to said Cyrus Chambers, Jr. [Affirmed.]

MORSELL, Circuit Judge. The appellant, in stating his claim in his specification, states very minutely all the various parts of it under eleven heads or divisions. This occupies great length, and instead of rectifying it, I must refer to it, and state the points or principles involved. As they are stated by himself, they are: First, propelling rollers to advance paper in a paper-folding machine, in combination with wires to support the paper while being advanced. Second, deflectors which are curved pieces of metal that turn the sheets as they pass through the folding rollers.

The commissioner's decision dated March 29, 1860, adopts the examiner's report dated the 16th of the same month. It says: "Chambers' application was made on the 10th of November, 1859, North's on the 22d of the same month. Chambers cites his invention as certain new and useful improvements in machinery for cutting and folding paper; and claims the combination of circular or revolving cutters with folding rollers for the purpose of cutting paper, as it is being folded; also sliding or moving the paper on or between bars or their equivalents by means of revolving wheels or rollers whose surfaces come in contact with the paper, &c. The claim is divided into four sections. North declares his invention to be certain new and useful improvements in machinery for folding paper and divides his into eleven sections. These sections embrace all that Chambers has claimed, excepting the cutters, which are however included in the devices, though they do not appear to be claimed. The interference was declared on the 5th of December, 1859. Chambers has produced but two witnesses, Robt. L. Armstrong and Cornelius Mullans, but has produced a caveat filed on the 30th of November, 1855, on which he chiefly relies to prove priority of invention. North has produced seven witnesses, two of whom are charged with being interested in the issue, one being himself, the other William Matthews. The caveat of Cyrus Chambers with additional papers filed on the 30th of November, 1855, establishes his priority of

claim to the bars and rollers, but not to the cutters. The office cannot ignore the existence of Myers and Dukehart's paper-folding machine rejected on the 28th of June, 1853, where the rotary cutter is shown and described. Therefore it is respectfully suggested that a patent be issued to Chambers for his device to dispense with the tapes constituting the third and fourth sections of his claim when he shall have cancelled the two first sections of the same. I further suggest that a patent be granted to John North on his removing all sections of his claim interfering with the prior claims of Cyrus Chambers which have been clearly proved as above set forth. The commissioner says: "The foregoing report is confirmed and patent allowed to Cyrus Chambers, Jr., upon the third and fourth sections of his claim, when he shall have cancelled the two first sections thereof. A patent is also allowed to John North upon the cancellation of all sections of his claim which interfere with the prior claims of Cyrus Chambers, Jr."

From which decision the appellant, having prayed an appeal, filed his reasons of appeal. First on the ground that the said Chambers has never, up to the time of the hearing of the interference before the commissioner, made a working machine or a drawing or a model of one, has never applied his idea or suggestion to practice, and consequently has never made the invention. and that his acts are therefore no bar to the grant of a patent to North. And secondly, that even if his application for a patent be held to describe a working machine, he has never exercised diligence in applying his idea to practice, and in fact abandoned his idea until after he saw North's working machine, and that consequently he, the said Chambers, is not to be deemed the first inventor,—but on the contrary, North, who invented, independently used diligence and first practically embodied the idea in a working machine, is really the first original inventor, and this appellant further objects to the honorable commissioner's decision for the reason that he, as far as this appellant can discover, refuses to grant to him a patent for the deflectors specified in his application, the equivalents for which are described in the application of Chambers. and without assigning any reason therefor, and without deciding, as appears from the evidence, that they are public property, and belong neither to North or Chambers, which ought to have been his decision, as the testimony does not show that Chambers ever invented them, as it shows they were in use more than two years prior to Chambers' application, with his knowledge, even if he was an inventor, and as it shows that North, although an inventor, invented subsequent to the public use of said deflectors in Philadelphia, &c. Further, in conclusion, he says that "even supposing Chambers to have

been an inventor subsequent to the Philadelphia use, and that such use was without his knowledge, nevertheless such public use deprives both him and North of their rights to a patent for a subsequent invention." According to the foregoing state of proceedings, the original papers and documents with the evidence, the commissioner's decision, and the reasons of appeal, were laid before me by the commissioner of patents in pursuance of previous due notice of the time and place of hearing, at which time the respective parties appeared by their counsel, filed their arguments in writing and submitted the case.

The issue to be tried and decided between these parties is priority of invention, and evidence has been taken by each of them with that view. Chambers dates his invention as early as November, 1855; North's claim appears to be of a more recent date in the year 1858. Chambers' application was filed 10th November, 1859. North on the 22nd of the same month. Ordinarily the appellant holding the affirmative of the issue, and according to the practice of the office, before an interference is declared, the inventions being ascertained to be identically the same, the simple question then, which in its character is rather collateral than on the merits, (for both may be independent inventors,) to be tried, has been which of the two was the first, and original discoverer of that invention. and the evidence shaped accordingly. But instead of substantively relying on the strength of his own title, his principal ground seems to be the weakness of his adversary's, and accordingly, his reason of appeal involving as he supposes the two points of objection before stated, he proceeds in his argument to take a resume of the testimony, from which he supposes it nowhere appears that Chambers has ever constructed a practical or operating folding machine containing propelling rollers and wires, and that he has never built such a machine. Second, nor that Chambers built the model sent to the office until after he had requested to see, and had seen and examined, North's machine. Third, that it appears from the testimony of Worthen, an engineer of reputation and experience, and from that of Matthews, a book-binder, and from that of McLeod, a book-binder, that Chambers' model, as described in his application, is not a model of a practical machine for folding paper, and that a machine constructed after that model would be entirely inoperative. It appears also from the testimony of English, a working book-binder, that propelling rollers on the underside of the paper only will not work, &c.; he saw the experiment tried, &c. Fourth, it appears that Chambers filed a caveat, or rather an additional paper making a part of a caveat, by a letter dated November 28, 1855, &c.; substantially admitting that an idea or suggestion has been conceived by Chambers that he is going to experiment, in order to put the idea in practical shape; the language, in mentioning the wires and rollers, is not that paper can be propelled by rollers, but it may be slipped, &c. There is no hint how the paper is to be got out of the machine, no description of any upper rollers to press up the paper, no description on the addition, &c. He concludes therefore that the caveat is proof of an idea, but no proof of an invention, which is an idea reduced to practice. Fifth, that North is an independent inventor. Sixth,. that the witnesses prove North conceived the idea, experimented on it, altered one working machine so as to introduce his invention into it, and had another working machine built, and that both those machines were in use up to the time when the testimony was taken, and that he wasted no time in making these successive steps. To support the positions taken in this branch of his argument he has referred to various judicial decisions, before noticing which it may be proper to state that having considered the objection to the competency of the two witnesses, North and Matthews, I am satisfied the objection must be sustained and their testimony be ruled out of the case.

In the case of Dietz v. Wade [Case No. 3,903,] on appeal from the commissioner of patents, similar grounds were taken, and the same authorities (except the cases before Judge Sprague and Judge Clifford) were cited and relied on, and after a very full and thorough consideration given them, my conclusion was that the principles decided by them did not sustain the positions contended for on this point by the appellees, and so I think in this case. for I consider the decisions of Judge Sprague and Judge Clifford not materially different from the others cited. With respect to the description, although it cannot be so satisfactorily seen in the model, yet the specification, drawings and other papers connected therewith do seem to me to describe it sufficiently to enable any one skilled in the art to make and use the invention. In the interpretation a liberal construction should be given. As to the opinion of the experts, I am very much disposed to think as Judge Story says he did. He says "that in the course of thirty years' experience he had never known them to agree in opinion as to whether any machine was really an invention or not." I have seen enough with my own eyes to satisfy me they were mistaken.

As to the objection on the ground of laches and abandonment, the decision on the Case of Dietz [supra] also establishes the right of the inventor to an allowance of a reasonable time, to be judged of according to the circumstances of the case, in which to perfect his invention, without impairing his claim to priority. The facts in the case from the earliest time of the discovery prove

constant and unremitting endeavors to prepare it for his application for a patent. His early and repeated caveats, &c., and his experimental advances to attain the desired object, show that he was not unreasonably sleeping on his rights and awoke only by the filing of an application by another inventor, for he was the first of the two in this cause; nor do I observe any other use than is permitted for necessary experiments; no public use took place before January, 1858, less than two years before filing his application.

I think, from the fullest and best consideration I have been enabled to give to the case, that the decision of the commissioner is correct, and ought to be affirmed, and the same is accordingly hereby affirmed.